No. 22-13338

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

VFS LEASING CO.,

*Plaintiff-Appellee,*

v.

MARKEL AMERICAN INSURANCE COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Middle District of Florida
No. 8:21-cv-01297-TPB-JSS
Hon. Thomas P. Barber, Presiding

OPENING BRIEF OF
MARKEL AMERICAN INSURANCE COMPANY

ZINOBER DIANA &amp;          DICKINSON WRIGHT PLLC
MONTEVERDE P.A.           Bennett Evan Cooper
Michael J. Rivero        1850 N. Central Ave., Suite 1400
607 W. Horatio St.       Phoenix, Arizona 85004
Tampa, Florida 33607     (602) 285-5000
(813) 642-4229

Attorneys for Defendant-Appellant
Markel American Insurance Company

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1(a), counsel for defendant-appellant Markel American Insurance Company hereby certifies that the following listed persons and entities have or may have an interest in the outcome of this case:

| | |
|---|---|
| Aktiebolaget Volvo ("AB Volvo") | Ultimate parent of VFS US LLC and appellee VFS Leasing Co. |
| Barber, Hon. Thomas P. | United States District Judge |
| Cooper, Bennett Evan | Counsel for appellant Markel American Insurance Company |
| Dickinson Wright PLLC | Counsel for appellant Markel American Insurance Company |
| Loar, John F. | Counsel for appellee VFS Leasing Co. |
| Markel American Insurance Company | Appellant |
| Markel Corporation (MKL) | Parent company of appellant Markel American Insurance Company |
| Nelson Mullins Riley & Scarborough, LLP | Counsel for appellee VFS Leasing Co. |
| Pohl, Beverly A. | Counsel for appellee VFS Leasing Co. |
| Rivero, Michael | Counsel for appellant Markel American Insurance Company |
| Sneed, Hon. Julie S. | United States Magistrate Judge |

| | |
|---|---|
| Tosh, Elizabeth | Counsel for appellant Markel American Insurance Company |
| VFS Leasing Co. | Appellee |
| VFS US LLC d/b/a Volvo Financial Services | Parent of appellee VFS Leasing Co. |
| Vilmos, Nicolette C. | Counsel for appellee VFS Leasing Co. |
| Zinober, Diana & Monteverde P.A. | Counsel for appellant Markel American Insurance Company |

Pursuant to FRAP 26.1(a), appellant Markel American Insurance Company discloses that it is wholly owned (100%) by Markel Corporation, a publicly traded company that is traded on the New York Stock Exchange under the ticker symbol "MKL." No parent entity or publicly held entity owns 10% or more of the stock of Markel Corporation.

## STATEMENT REGARDING ORAL ARGUMENT

Markel American Insurance Company requests oral argument in this appeal, as it raises an issue of first impression and statewide importance under Florida's version of Article III of the Uniform Commercial Code.

# TABLE OF CONTENTS

*Page*

Certificate of Interested Persons and Corporate Disclosure Statement .......................................................................... 2

Statement Regarding Oral Argument ....................................... 4

Table of Contents ..................................................................... 5

Table of Citations ..................................................................... 7

Statement of Subject-Matter and Appellate Jurisdiction ...................... 11

Introduction ............................................................................. 11

Statement of the Issues ............................................................ 12

Statement of the Case .............................................................. 13

    A.    MAIC insures TDL for property damage and properly pays TDL's claims. ............................................... 13

    B.    VFS sues to compel MAIC to pay TDL's claims a second time because TDL converted the first payments. ............................................................... 15

    C.    The district court grapnts VFS summary judgment, making MAIC pay the same obligations a second time. ................................................................. 16

    D.    Standard of review ................................................ 17

Summary of Argument ............................................................. 17

Argument ................................................................................. 19

I.    The district court erred by disregarding the plain language of the UCC and the exclusive obligations of a bank to refuse improperly endorsed drafts. ................................. 19

II.   The better reasoned persuasive authority supports MAIC's position that the banks, not the innocent payor, are liable in this circumstance. ...................................................................... 25

Conclusion ................................................................................. 29

Certificate of Compliance ......................................................... 31

## TABLE OF CITATIONS

*Pages*

## Cases

*1321 Whitfield, LLC v. Silverman*,
   67 So. 3d 435 (Fla. Dist. Ct. App. 2011)............................................... 31

*A.C.E., Inc. v. Inland Mortg. Co.*,
   969 S.W.2d 176 (Ark. 1998).................................................................. 28

*Allen v. Coates*,
   661 So. 2d 87 9, 882 (Fla. Dist. Ct. App. 1995).................................... 23

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Allstate Ins. Co.*,
   29 F. Supp. 2d 1129 (C.D. Cal 1998).................................................... 23

*BMC Indus., Inc. v. Barth Indus., Inc.*,
   160 F.3d 1322 (11th Cir. 1998).............................................................. 21

*Citizens & Peoples Nat'l Bank of Pensacola v. Futch*,
   650 So. 2d 1008 (Fla. Dist. Ct. App. 1994).......................................... 29

*Comm'r v. Driscoll*,
   669 F.3d 1309 (11th Cir. 2012).............................................................. 19

*Daniels v. Select Portfolio Servicing, Inc.*,
   34 F.4th 1260 (11th Cir. 2022) .............................................................. 30

*Davis v. Cuesta*,
   1 So. 2d 475 (Fla. 1941) ........................................................................ 25

*Element Fin. Corp. v. Marcinkoski Gradall, Inc.*,
   215 So. 3d 1252 (Fla. Dist. Ct. App. 2017).......................................... 29

*Ellis v. England*,
   432 F.3d 1321 (11th Cir. 2005).............................................................. 19

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) .................................................................................. 21

*Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co.*,
  602 N.E.2d 1085 (Mass. 1992) .............................................. 29

*Halliburton Co. v. E. Cement Corp.*,
  672 So. 2d 844 (Fla. Dist. Ct. App. 1996) ........................... 29

*Howard & Assocs. Att'ys at L., P.A. v. BWCI Pension Trs. Ltd.*,
  298 So. 3d 684 (Fla. Dist. Ct. App. 2020) ........................... 29

*Husky Indus., Inc. v. Black*,
  434 So. 2d 988 (Fla. Dist. Ct. App. 1983) ........................... 29

*LeFrere v. Quezada*,
  582 F.3d 1260 (11th Cir. 2009) ............................................ 21

*Miami Beach First Nat'l Bank v. Edgerly*,
  121 So. 2d 417 (Fla. 1960) ...................................... 20, 24, 30

*Tepper ex rel. Michelson v. Citizens Fed. Savings & Loan Ass'n*,
  448 So. 2d 1138 (Fla. Dist. Ct. App. 1984) ................... 21, 22

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ............................................................. 30

*State ex rel. N.D. Hous. Fin. Agency v. Ctr. Mut. Ins. Co.*,
  720 N.W.2d 425 (N.D. 2006) .............................................. 30

*Nat'l Bank of Sarasota v. Dugger*,
  335 So. 2d 859 (Fla. Dist. Ct. App. 1976) ........................... 23

*Northeast Bank v. Wells Fargo Bank, N.A.*,
  2012 WL 2721635 (D. Minn. July 9, 2012) ......................... 23

*Northpark Nat'l Bank v. Bankers Tr. Co.*,
  572 F. Supp. 524 (S.D.N.Y. 1983) ...................................... 25

*Parkway Bank & Tr. Co. v. State Farm Fire & Cas. Co.*,
  990 N.E.2d 1202 (Ill. App. Ct. 2013) ............................ 23, 28

*PMT NPL Fin. 2015-1 v. Centurion Sys., LLC*, 257 So. 3d
516 (Fla. Dist. Ct. App. 2018) ............................................... 23

*Reamer v. State Auto. Mut. Ins. Co.*,
556 F. Supp. 3d 544 (D. Md. 2021), *appeal filed*, No. 21-
2432 (4th Cir. Dec. 22, 2021) ....................................... 27, 28

*SEC v. Elliott*,
620 So. 2d 159 (Fla. 1993) .................................................. 21

*In re Tug Allie-B, Inc.*,
114 F. Supp. 2d 1301 (M.D. Fla. 2000), *aff'd sub nom. Tug
Allie-B, Inc. v. United States*, 273 F.3d 936 (11th Cir.
2001) .................................................................................. 31

*United Auto. Ins. Co. v. Rivero Diagnostic Ctr., Inc.*,
327 So. 3d 376 (Fla. Dist. Ct. App. 2021), *review denied*,
2022 WL 165154 (Fla. Jan. 19, 2022)................................. 23

*United States v. Varner*,
13 F.3d 1503 (11th Cir. 1994).............................................. 21

*United States v. Williams*,
350 F.3d 1231 (11th Cir. 2003)............................................ 19

*Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*,
552 So. 2d 194 (Fla. 1989) .................................................. 23

**Statutes**

28 U.S.C. § 1291................................................................... 13

28 U.S.C. § 1332(a) .............................................................. 13

28 U.S.C. § 1441................................................................... 13

28 U.S.C. § 1446................................................................... 13

Fla. Stat. § 673.1041 (UCC § 3-104) ...................................... 21

Fla. Stat. § 673.1101 (UCC § 3-110) ..................... 18, 22, 28, 30

Fla. Stat. § 673.3011 (UCC § 3-301) ..........................................29

Fla. Stat. § 673.3091 (UCC § 3-309) ..........................................22

Fla. Stat. § 673.3101 (UCC § 3-310) .........................20, 22, 23, 24, 27, 28

Fla. Stat. § 673.4141 (UCC § 3-414) ..............14, 20, 22, 23, 27, 28, 30, 31

Fla. Stat. § 673.4201 (UCC § 3-420) ..........................................26

Fla. Stat. § 673.6021 (UCC § 3-602) ..........................................29

Md. Com. Law Code. § 3-414..................................................28

## Other Authorities

Samuel J.M. Donnelly & Mary Ann Donnelly, *Commercial Law*, 44 Syracuse L. Rev. 109 (1993) .................................25

John V. Ivsan, *Informational Liability and International Law*, 21 Ohio N.U. L. Rev. 263 (1994) .................................25

Howard S. Koh, *Liability for Lost or Stolen Funds in Cases of Name and Number Discrepancies in Wire Transfers*, 22 Cornell Int'l L.J. 91 (1989)......................................25

White, Summers & Hillman, UNIFORM COMMERCIAL CODE (6th ed. 2022)........................................................29

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 1441(b) because there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs, and the action was timely removed from the Florida Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, to the district court under 28 U.S.C. §§ 1441 and 1446. This Court has jurisdiction under 28 U.S.C. § 1291 of this appeal from a final judgment that disposes of all the parties' claims.

The district court entered its final judgment for plaintiff-appellee VFS Leasing Co. on August 31, 2022. (Doc. 72, App. 404.) Defendant-appellant Markel American Insurance Company ("MAIC") timely filed its notice of appeal on September 28, 2022. (Doc. 73, App. 407.) Because of an issue with the event filing type used (Doc. 73, App 407), at the district court's request MAIC refiled its notice of appeal on October 3, 2022 (Doc. 74, App. 410).

## INTRODUCTION

This case presents a pure issue of law under the Uniform Commercial Code, albeit one of first impression in Florida: Is the drawer of a check payable to joint payees liable where one of the co-payees improperly and unilaterally negotiates a check and takes the money? On summary judgment, the district court incorrectly held that the drawer is liable. It therefore ruled that even though Markel American Insurance

Company had already made full payment under its property policies by issuing checks jointly payable to its insured, Time Definite Leasing, LLC ("TDL"), and TDL's loss payee, VFS Leasing Co., MAIC had to pay VFS a second time because TDL improperly negotiated the checks at a bank and did not pay VFS. The district court failed to acknowledge UCC § 3-414(c), enacted by Florida, which answers this question logically and fairly: ""If a draft is accepted by a bank, the drawer is discharged, *regardless of when or by whom acceptance was obtained.*" Fla. Stat. § 673.4141(3) (emphasis added). VFS's claim was properly against TDL or the bank that accepted the checks without VFS's endorsement; MAIC had no obligation to pay a second time. This Court should reverse the district court's ruling and order entry of judgment for MAIC.

## STATEMENT OF THE ISSUES

Under the Uniform Commercial Code, a drawer of a check is discharged from its obligation if that check "is accepted by a bank, … regardless of when or by whom acceptance was obtained." Fla. Stat. § 673.4141(3). Does that categorical "discharge" apply when a joint check is improperly negotiated by a bank and payment is made with only one co-payee's endorsement?

## STATEMENT OF THE CASE

### A. MAIC insures TDL for property damage and properly pays TDL's claims.

Pertinent to this appeal, MAIC issued to TDL insurance policies providing first-party property coverage for two policy years: October 1, 2016, to October 1, 2017, and October 1, 2017, to October 1, 2018. (Doc. 66-1, App. 126 (2016–2017 policy); Doc. 66-2, App. 240 (2017–2018 policy).) The policies provided that, in the event of a covered loss, "'[w]e' adjust each loss with 'you,'" and "[p]ayment is made to 'you' unless a loss payee is named." (Doc. 66-1 at 88–89, App. 213–14; Doc. 66-2, at 122–23, App. 360–61.) The policies further provided in Loss Payable Schedules that "[b]lanket coverage for Loss Payees and/or Additional Insured apply as listed on Certificates of Insurance issued by the Agent/Broker and on file at their location." (Doc. 66-1 at 105, App. 230; *see* Doc. 66-2 at 84, App. 323 (similar).) The district court determined that VFS was a loss payee, not an additional insured. (Doc. 71 at 2 n.2, App. 391.)

According to VFS, from 2016 to 2018 it leased tractors to TDL. (Doc. 63 at 2 ¶ 1, App. 77.) TDL had its broker issue certificates of insurance listing VFS as a loss payee on the leased tractors. (*Id.* ¶ 2.) The certificates specifically recognized that they did not constitute a contract between the insurer and the loss payee:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.

THIS CERTIFICATE DOES NOT AFFIRMA-
TIVELY NOR NEGATIVELY AMEND, EXTEND
OR ALTER THE COVERAGE AFFORDED BY
THE POLICIES BELOW. THIS CERTIFICATE
DOES NOT CONSTITUTE A CONTRACT
BETWEEN THE ISSUING INSURER(s), AUTH-
ORIZED REPRESENTATIVE OR PRODUCER,
AND THE CERTIFICATE HOLDER.

(Docs. 63-6 & 63-7, App. 99 & 104.)

From March 2017 to June 2018, five leased tractors were damaged, and TDL submitted five proofs of loss to MAIC under its property policies. (Doc. 63-3, App. 76.) Each proof of loss identified VFS as the owner of the tractor. (*Id.*) MAIC paid those five claims by issuing joint checks totaling $573,404.32 and payable to TDL *and* VFS (or their affiliates). Three checks were made payable to "Time Definite Services, Inc. and VFS Leasing, LLC"; one was made payable to "Time Definite Services, Inc. and VFS US, LLC & Assigns"; and one was made payable to "Time Definite Service Transportation, Inc. and VFS US LLC & Assigns." (Doc. 63-4, App. 93.)[1] It is undisputed that MAIC delivered the checks to its insured, TDL. (Doc. 63 at 6 ¶ 7, App. 81.) MAIC was not required by its policies to provide notice of its checks to loss payees, and it did not do so.

Somehow, without securing VFS's endorsement on the joint checks, TDL was able to negotiate the checks by depositing them with its bank, JPMorgan Chase, and the checks were then accepted by MAIC's payee

_____

[1] VFS has not argued that the co-payees were incorrectly identified on the respective checks.

bank, SunTrust Bank. (Doc. 63 at 4 ¶ 8, App. 79; Doc. 63-4, App. 93; Doc 59 ¶¶ 7–8, App. 55–56.) VFS claims that TDL never paid it any portion of the insurance proceeds (Doc. 63 at 4 ¶ 9, App. 79.) As the district court noted, TDL later filed for bankruptcy. (Doc. 71 at 3, App. 392.)

## B.  VFS sues to compel MAIC to pay TDL's claims a second time because TDL converted the first payments.

VFS brought this action in Florida state court alleging a single claim for an accounting (Doc. 1, App. 4), and later filed an amended complaint alleging a single claim for breach of contract (Doc. 29, App. 35). VFS named Markel Insurance Company ("MIC") as the defendant in the state-court complaint, and MIC removed the action to the district court based on diversity of citizenship. (Doc. 1, App. 4.) VFS's amended complaint named both MIC and MAIC (Doc. 29, App. 35), but the district court dismissed MIC as a defendant (Doc. 71 at 3 n.3, App. 392).

VFS's sole substantive argument in either complaint was that MAIC did not "pay" VFS for the five proofs of loss because TDL improperly negotiated the joint checks to the co-payees without VFS's endorsement, knowledge, or consent, and thereby converted the funds. Therefore, VFS claimed, MAIC did not discharge its contractual obligation and was required to pay the $573,404.32 total a second time.

**C. The district court grants VFS summary judgment, making MAIC pay the same obligations a second time.**

On the parties' cross-motions for summary judgment, the district court granted summary for VFS and denied summary judgment for MAIC. (Doc. 71, App. 390.) The court properly began its analysis of the issues under Florida's enactment of the Uniform Commercial Code, specifically Article III pertaining to negotiable instruments, which is codified at Chapter 673 of the Florida Statutes. The court recognized that there was no controlling case law, and that no Florida court has addressed the issue of who should bear the loss of an improperly negotiated joint check. (*Id.* at 6, 8, App. 395, 397.) In the court's view, there was a split of authority from other jurisdictions reaching different conclusions on that question: some jurisdictions have concluded that the delivery of a two-party check to one of the two co-payees discharges the obligation to pay, while other jurisdictions have concluded that an improperly negotiated instrument that results in nonpayment to one of the co-payees does not discharge the obligation to pay. (*Id.*) The court concluded that "the law on this point is, at best, inconsistent and certainly not uniform." (*Id.* at 8, App. 397.)

In attempting to resolve that conflict, the district court focused on UCC § 3-110(d), which provides that "[i]f an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." Fla. Stat.

§ 673.1101(4). Although the district court acknowledged that "this UCC provision does not directly address the issue presented here," it believed that the comment to the provision "seems to support" the notion that an obligation is not discharged where a joint payee improperly cashes a two-party check. (*Id.* at 9, App. 398.)

On that basis, the district court entered judgment for VFS and against MAIC in the amount of MAIC's checks, $573,404.32. (Doc. 72, App. 404.) This appeal followed.

## D.    Standard of review

This Court reviews de novo the district court's grant or denial of summary judgment. *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005). In addition, this Court reviews de novo questions of law, including questions of statutory interpretation. *United States v. Williams*, 350 F.3d 1231, 1235 (11th Cir. 2003); *Comm'r v. Driscoll*, 669 F.3d 1309, 1311 (11th Cir. 2012).

SUMMARY OF ARGUMENT

The district court erroneously concluded that a drawer who issues a joint check to co-payees—and who has no control over what happens once the check is delivered—is financially responsible for the consequences of one co-payee's conversion of the check. Such a rule is against the plain language of the Uniform Commercial Code and the weight of better-reasoned authority.

Under the UCC, once a draft is accepted by a bank, the drawer is discharged from any further obligation. Section 3-414(c) of the UCC makes manifest that "[i]f a draft is accepted by a bank, the drawer is discharged, *regardless of when or by whom acceptance was obtained.*" Fla. Stat. § 673.4141(3) (emphasis added). The comments to section 3-310 of the UCC make clear that a payee who is the victim of a misappropriated check cannot sue the drawer on the underlying agreement, but must instead pursue the banks that caused the problem by improperly negotiating the check. Fla. Stat. § 673.3101 cmt 4.

That rule is consistent with Florida law, which "unquestionably places upon a bank the duty to ascertain the genuineness of endorsements on checks presented to it for payment and to pay the proceeds of the check only to the payee, or to those as directed by him through endorsement thereon." *Miami Beach First Nat'l Bank v. Edgerly*, 121 So. 2d 417, 419 (Fla. 1960). The drawer of a check has no opportunity once the check is delivered and entered into the wider world to ensure it is properly negotiated—that obligation belongs exclusively to banks. *Id.* Because the depositary bank where the wrongdoer deposits the check has the last clear chance to prevent the loss, it alone should bear the risk of loss, not the helpless drawer.

Although this is a question of first impression in Florida, other courts around the country have dealt with this issue extensively. The better-reasoned cases recognize that, as stated above, imposing liability

on the drawer places it in a precarious, virtually untenable position. The better rule is to require the payee who did not receive the funds to sue the depositary bank directly, not the innocent drawer that properly issued the joint checks.

**ARGUMENT**

## I. The district court erred by disregarding the plain language of the UCC and the exclusive obligations of a bank to refuse improperly endorsed drafts.

The district court erred by reaching the legal conclusion that, under Article III of the UCC, MAIC did not discharge its obligation by delivering the two-party checks to its insured, TDL. This Court has routinely concluded that, as with any other statute, interpretation of the UCC begins with the plain language of that statutory scheme. *See, e.g.*, *United States v. Varner*, 13 F.3d 1503, 1508 (11th Cir. 1994); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1333 (11th Cir. 1998). The Florida Supreme Court follows the same approach. *SEC v. Elliott*, 620 So. 2d 159, 160 (Fla. 1993). Here, this Court's goal is to interpret the UCC as it believes the Florida Supreme Court would. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *LeFrere v. Quezada*, 582 F.3d 1260, 1264 (11th Cir. 2009).

Under the UCC, a check is a type of "draft"—an order for a bank to pay—that is payable on demand. Fla. Stat. § 673.1041(6); *Tepper ex rel. Michelson v. Citizens Fed. Savings & Loan Ass'n*, 448 So. 2d 1138, 1140 (Fla. Dist. Ct. App. 1984). A draft that is made to joint payees may be

19

"negotiated, discharged, or enforced" only with the consent and endorsement of all named payees. Fla. Stat. § 673-1101(4) (UCC § 3-110). Thus, the negotiation of a joint check endorsed by only one payee is improper and should not be accepted. *Id.*

Under Florida law, a check's drafter—here, MAIC—is only secondarily and conditionally liable for payment on a check, "in that there are conditions precedent to liability." *Tepper*, 448 So. 2d at 1140. In contrast, the act of accepting the instrument renders the drawee—the bank on which funds are drawn—"primarily liable as an acceptor." *Id.* To that end, the plain language of UCC § 3-414(c) makes manifest that if a check is accepted by a bank, the obligations of the drawer are discharged in their entirety: "If a draft is accepted by a bank, the drawer is discharged, *regardless of when or by whom acceptance was obtained.*" Fla. Stat. § 673.4141(3) (emphasis added).

It is the bank that is liable, *not* the drawer of the check. Under UCC § 3-310, if a check is paid by a financial institution to someone not entitled to enforce the agreement, such as a single co-payee, "[t]he payee's cause of action is against the depositary bank or payor bank." Fla. Stat. § 673.3101 cmt. 4 (UCC § 3-310). In no circumstances can the payee "merely ignore the instrument and sue the drawer on the underlying contract." *Id.*[2]

_____

[2] If a payee can meet the requirements of Fla. Stat. § 673.3091— i.e., the instrument is lost, destroyed, or stolen—the payee may proceed

The district court erred in failing to consider in its analysis either the plain language of UCC § 3-414(c) or the comments to UCC § 3-310, even though Florida (unlike some other states) has adopted both the text of the UCC *and* the accompanying comments. *See, e.g.*, *Nat'l Bank of Sarasota v. Dugger*, 335 So. 2d 859, 861 (Fla. Dist. Ct. App. 1976) (explaining that "[t]he legislature of this state [has] adopt[ed] the UCC and the comments thereto").[3] The district court repeatedly cited UCC § 3-310 (Fla. Stat. § 673.3101) in its analysis—as well as cases citing that provision as the basis for finding *no* payor liability[4]—but failed to apply the rule that a payee on a misappropriated instrument cannot "merely

---

against the drawer as well, but VFS has never argued it can satisfy the elements of that statute.

[3] *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 197 (Fla. 1989) (relying on "the text" of the UCC "and the accompanying comments"); *United Auto. Ins. Co. v. Rivero Diagnostic Ctr., Inc.*, 327 So. 3d 376, 380 n.2 (Fla. Dist. Ct. App. 2021) (recognizing that "Florida courts often rely upon the Code and its comments for guidance"), *review denied*, 2022 WL 165154 (Fla. Jan. 19, 2022); *PMT NPL Fin. 2015-1 v. Centurion Sys., LLC*, 257 So. 3d 516, 519 n.2 (Fla. Dist. Ct. App. 2018) (explaining that "Florida courts look to U.C.C. Comments in interpreting the corresponding provisions of Florida's U.C.C."); *Allen v. Coates*, 661 So. 2d 87 9, 882 (Fla. Dist. Ct. App. 1995) (noting that "we are guided by the official comments of the Uniform Commercial Code adopted in Florida").

[4] Doc. 71 at 7 n.6, App. 396 (citing *Parkway Bank & Tr. Co. v. State Farm Fire & Cas. Co.*, 990 N.E.2d 1202, 1207–08 (Ill. App. Ct. 2013); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1144 (C.D. Cal 1998); *Northeast Bank v. Wells Fargo Bank, N.A.*, 2012 WL 2721635, at *2-3 (D. Minn. July 9, 2012)).

ignore the instrument and sue the drawer on the underlying contract."
Fla. Stat. § 673.3101 cmt. 4. Instead, the district court did the opposite.

This rule is neither surprising nor controversial, because it is backed by considerations of common sense, sound policy, and equity. As the Florida Supreme Court has explained, banks play a unique role in ensuring the correct endorsements are in place and the draft is negotiated only as intended:

> [T]he law unquestionably places upon a bank the duty to ascertain the genuineness of endorsements on checks presented to it for payment and to pay the proceeds of the check only to the payee, or to those as directed by him through endorsement thereon. The law is well settled that if a bank pays a check with a forged endorsement it pays out its own funds, not those of the depositor.

*Miami Beach First Nat'l Bank v. Edgerly*, 121 So. 2d 417, 419 (Fla. 1960). Under Florida law, "it is the responsibility of the bank, *solely*, to determine the genuineness of the endorsement and the identity of the person presenting the check for payment." *Id.* (emphasis added). The law imposes those obligation on banks because, when the instrument is presented to the bank, it has the opportunity to ensure the instrument is being paid to the right person, "whereas the maker of the check has no such opportunity." *Id.*

As the Florida Supreme Court recognized in *Edgerly*, it is the bank, *and only the bank*, that has any control or ability to avoid the loss. Banks

have the expertise, and the obligation, to make sure that drafts are paid only in accordance with the instructions on that order to pay. The Florida Supreme Court has elsewhere explained that the "last clear chance" doctrine "places the liability on him who commits the last proximate negligent act. *By committing the last negligent act he thereby renders all others remote.* His act becomes immediate and proximate and therefore actionable." *Davis v. Cuesta*, 1 So. 2d 475, 476 (Fla. 1941) (emphasis added). Other courts and commentators have recognized that the UCC applies the "last clear chance" doctrine in numerous settings.[5] This is another such circumstance in which the doctrine should apply.

The UCC, as interpreted by Florida courts, thus recognizes an implacable reality: once a payor delivers a check to a payee, it loses all control over check and has no ability to direct how the payee negotiates

---

[5] *See, e.g.*, *Northpark Nat'l Bank v. Bankers Tr. Co.*, 572 F. Supp. 524, 534 (S.D.N.Y. 1983) ("If there is a policy implicit in the U.C.C.'s rules for the allocation of losses due to fraud, it surely is that the loss be placed on the party in the best position to prevent it."); Samuel J.M. Donnelly & Mary Ann Donnelly, *Commercial Law*, 44 Syracuse L. Rev. 109, 148 (1993) (noting that "the sender's bank bears the risk of errors in transmitting the wire instructions under the 'last clear chance' doctrine"); John V. Ivsan, *Informational Liability and International Law*, 21 Ohio N.U. L. Rev. 263, 272 (1994) (recognizing that UCC "§ 4A-207 imposes the 'last clear chance' doctrine by making the beneficiary bank, the last bank in the wire transfer chain, responsible for visible discrepancies that could avert the loss"); Howard S. Koh, *Liability for Lost or Stolen Funds in Cases of Name and Number Discrepancies in Wire Transfers*, 22 Cornell Int'l L.J. 91, 109–10 (1989) (explaining that "the drawee bank has the 'last clear chance' to detect an irregularity").

or endorses it. Indeed, the district court recognized that "what occurred after the checks were issued was beyond Markel's control." (Doc. 71 at 12, App. 401.) A check can be endorsed any number of times and deposited without the drawer's ever knowing. Consistent with industry practice, MAIC delivered its two-party checks to its insured, TDL, with the appropriate safeguard—the checks were made out to TDL "and" VFS. Under the UCC, "[i]f a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees." Fla. Stat. Ann. § 673.4201 cmt. 1 (UCC § 3-420). VFS does not explain what else a payor could reasonably do beyond effecting delivery. It does not suggest that a payor has to convene a meeting with the co-payees, put the checks in the middle of a table, back away carefully, and tell the co-payees to fight it out. Even if MAIC had given VFS notice of the delivery of the checks to TDL, VFS does not explain what difference that would have made or how it would have stopped TDL from converting the funds.

Here, MAIC is an innocent party. The wrongdoers were primarily TDL, for converting the funds, and secondarily the banks, for negotiating the checks without the proper endorsements and thereby preventing the loss. MAIC was acting as TDL's *property* insurer under a first-party coverage; it was not insuring TDL's liability to VFS under a third-party liability coverage. VFS's claim was properly brought against TDL and the banks; indeed, the district court recognized that the banks are liable for having "improperly cashed the two party check," and "Markel should not

be forced to pay twice for the same contractual obligation." (Doc. 71 at 12, App. 401.) The district court's rule, however, requires daisy-chain litigation, where the innocent co-payee sues the innocent payor, and the payor then has to sue the wrongdoing co-payee and banks. The better rule that the UCC imposes leaves the innocent payor out of the litigation, and makes the banks the proper defendants. That is Florida law.

## II.    The better-reasoned persuasive authority supports MAIC's position that the banks, not the innocent payor, are liable in this circumstance.

While, as the district court noted, courts in other jurisdictions are divided on the issue presented, most of them do not even acknowledge UCC § 3-414(c) or the comment to UCC § 3-310. The better-reasoned precedent rejects the district court's position. For example, in the most recent case, which involved similar facts, the District of Maryland analyzed UCC § 3-414(c) and properly concluded that the provision cuts off a drawer's liability for an improperly negotiated instrument. *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544 (D. Md. 2021), *appeal filed*, No. 21-2432 (4th Cir. Dec. 22, 2021).

In *Reamer*, an insurer issued three checks to joint payees. *Id.* at 547–48. Two of the checks were converted by one payee, who forged the name of the other payee before depositing the checks. *Id.* The payee whose name had been forged sued both the insurer and the bank that accepted the checks. *Id.* at 548. In rejecting the liability of the insurer,

the *Reamer* court stated that UCC § 3-110—on which the district court in this case relied—did *not* provide guidance on the matter, but rather "addresses the circumstances under which an instrument may be cashed at a bank by payees jointly or in the alternative." *Id.* at 550. The *Reamer* court ultimately based its decision on UCC § 3-414(c), and it concluded that the drawer's liability had been discharged because "[t]he obligation is discharged once the check is accepted by a bank, 'regardless of when or by whom acceptance was obtained.'" *Id.* at 551 (quoting Md. Com. Law Code. § 3-414). Thus, when the bank accepted the checks, payment was considered finalized, and the insurer's obligation was discharged. *Id.*

*Reamer* is far from unique that the drawer cannot be held liable in similar circumstances. *See, e.g.*, *A.C.E., Inc. v. Inland Mortg. Co.*, 969 S.W.2d 176, 177–78 (Ark. 1998) (holding under UCC § 3-414(c) that payment and acceptance by bank discharged drawer's obligations). And a number of other courts have reached the same conclusion under the rationale of UCC § 3-310 and its comment 4 even without resort to § 3-414(c). *See, e.g.*, *Parkway Bank & Tr. Co. v. State Farm Fire & Cas. Co.*, 990 N.E.2d 1202, 1207–08 (Ill. App. Ct. 2013) ("The instrument in question was not lost or destroyed—it was cashed. Further, there is no showing that the Tangs cannot be found or served."). Indeed, White & Summers, the preeminent UCC treatise that Florida courts have long

regarded as the "leading text on the UCC,"[6] concludes that a suit against a drawer for a misappropriated instrument is somewhat of a curiosity, and the suit should instead proceed against the depositary bank or drawee bank. 2 White, Summers & Hillman, UNIFORM COMMERCIAL CODE § 19:6 n.1 (6th ed. 2022).

The cases cited by the district court for the contrary view are not persuasive. The most-prominent case holding the payor liable is *General Motors Acceptance Corp. v. Abington Casualty Insurance Co.*, 602 N.E.2d 1085 (Mass. 1992), but that decision is not compatible with Florida law. *General Motors* stands for the proposition that, without a signature of all joint payees, an obligation cannot be "discharged" because payment must be made to a "holder" before discharge can occur, and no holder is paid in such a circumstance. *Id.* at 587–88. That is not what Florida's iteration of the UCC requires. First, payment need only be made to someone "entitled to enforce the instrument," not necessarily a holder. Fla. Stat. §§ 673.6021(1), 673.3011. Second, that case is incompatible with the

_____

[6] *Halliburton Co. v. E. Cement Corp.*, 672 So. 2d 844, 845 (Fla. Dist. Ct. App. 1996); *see also Citizens & Peoples Nat'l Bank of Pensacola v. Futch*, 650 So. 2d 1008, 1013, 1014 (Fla. Dist. Ct. App. 1994) ("leading commentators"); *Husky Indus., Inc. v. Black*, 434 So. 2d 988, 991 n.3 (Fla. Dist. Ct. App. 1983) ("a leading authority on the Uniform Commercial Code"). *See generally, e.g.*, *Howard & Assocs. Att'ys at L., P.A. v. BWCI Pension Trs. Ltd.*, 298 So. 3d 684, 686 (Fla. Dist. Ct. App. 2020) (quoting White & Summers); *Element Fin. Corp. v. Marcinkoski Gradall, Inc.*, 215 So. 3d 1252, 1257 (Fla. Dist. Ct. App. 2017) (following White & Summers).

primary—indeed, exclusive—responsibility of banks under Florida law to ensure that a check is negotiated only as directed by the drawer. *Edgerly*, 121 So. 2d at 419.

The district court also cited a North Dakota decision that attempts to avoid UCC § 3-414(c) in a manner Florida courts would not entertain. *State ex rel. N.D. Hous. Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425, 429-30 (N.D. 2006). The North Dakota court acknowledged that UCC § 3-414(c) "states the general rule regarding discharge of a drawer," but it claimed that "the Uniform Commercial Code contains a more specific provision expressly governing discharge when multiple payees are listed on an instrument," i.e., UCC § 3-110. *Id.* at 428. The court then fell back on the principle of construction that "[w]hen there is a conflict between statutes, we will construe specific statutes to control general statutes." *Id.* But there is no conflict between the statutes. Section 3-414(c) concerns when "the *drawer* is discharged," while section 3-110 concerns when "an *instrument* . . . may be negotiated, discharged, or enforced." The distinction is critical. For example, MAIC was discharged under section 3-414(c), but the five checks were not "discharged" (that is, had all effect extinguished) and may be "enforced" against the bank.

Further, this Court has recognized that the principle of specific statutes controlling over general ones applies only "when there is an *irreconcilable conflict* between two statutes." *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1271 (11th Cir. 2022) (quoting *Morales v.*

*Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (emphasis added)). The two statutes must concern "the same subject" and raise "a hopeless inconsistency before rules of construction are applied to defeat the plain language of one of the statutes." *1321 Whitfield, LLC v. Silverman*, 67 So. 3d 435, 436–37 (Fla. Dist. Ct. App. 2011) (quotations omitted). Thus, where, as here, the two statutes "can be read in harmony," the specific-over-general maxim does not apply. *Id.*

In any event, section 3-414(c) is the "specific" rule for discharge of the drawer. As the Middle District of Florida has previously noted, "[t]hat familiar maxim of statutory construction leaves the occasionally troubling question of which statute is more specific." *In re Tug Allie-B, Inc.*, 114 F. Supp. 2d 1301, 1307 (M.D. Fla. 2000) (deciding issue based on temporal argument instead), *aff'd sub nom. Tug Allie-B, Inc. v. United States*, 273 F.3d 936 (11th Cir. 2001). Here, only one statute specifically addresses the discharge of the drawer, and the rule of that statute is categorical—"regardless of when or by whom acceptance was obtained." That statute governs here.

## CONCLUSION

The Court should reverse the district court's judgment and order the entry of judgment in favor of MAIC.

DATED this 19th day of December, 2022.

DICKINSON WRIGHT PLLC

/s/ Bennett Evan Cooper
Bennett Evan Cooper
1850 N. Central Avenue, Suite 1850
Phoenix, Arizona 85004

ZINOBER DIANA &
MONTEVERDE P.A.
Michael J. Rivero
607 W. Horatio Street
Tampa, Florida 33606

Attorneys for Defendant-Appellant
Markel American Insurance
Company

### CERTIFICATE OF COMPLIANCE

1.    This brief complies with the length limits permitted by FRAP 32 because it contains 4,883 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii) and Circuit Rule 32-4.

2.    This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Century Schoolbook.

DATED this 19th day of December, 2022.

s/ Bennett Evan Cooper